IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

TRACY GILLIS,                                              Civ. No. 6:17-cv-00705-AA

                Plaintiff,                        **OPINION & ORDER**

      v.

CHANDRA CHAPMAN; JORDAN
MEYER; DIANE BEECHINOR;
LINDA CANIZALES; RACHEL
CUDMORE; FARIBORZ PAKSERISHT,

             Defendants.
_____

AIKEN, District Judge.

      This case comes before the Court on a Motion for Summary Judgment filed by

Defendant Rachel Cudmore, ECF No. 50, and on a Motion for Summary Judgment

filed by Defendants Chandra Chapman, Jordan Meyer, Diane Beechinor, Linda

Canizales, and Fariborz Pakserisht (collectively, the "State Defendants,"), ECF No.

51.  For the reasons set forth below, Cudmore's Motion for Summary Judgment is

GRANTED and the State Defendants' Motion for Summary Judgment is GRANTED.

## LEGAL STANDARD

      Summary judgment is appropriate if the pleadings, depositions, answers to

interrogatories, affidavits, and admissions on file, if any, show "that there is no

genuine dispute as to any material fact and the [moving party] is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec.*, 809 F.2d at 630-31.

## EVIDENTIARY OBJECTIONS

Before moving on to the substance of Defendants' motions, the Court must resolve evidentiary objections that have been raised concerning the materials submitted in support of Plaintiff's response brief. The evidence presented in support of or in opposition to a motion for summary judgment must be based on personal knowledge, properly authenticated, and admissible under the Federal Rules of

Evidence. Fed. R. Civ. P. 56(c). The court must determine what evidence is admissible, relevant, and substantive. Fed. R. Evid. 104. A party filing or opposing a motion for summary judgment will generally support their position with affidavits or declarations and Rule 56 requires that that the affidavit or declaration "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). In ruling on a motion for summary judgment, the court will consider the admissibility of the proffered evidence's contents, not its form. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) ("At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its content.").

In support of her response brief, Plaintiff offers declarations and exhibits to which Defendants object on the bases of, variously, lack of personal knowledge or foundation; hearsay; and/or that they offer improper lay opinion as to legal or expert conclusions. At the summary judgment stage, courts must look at the evidence presented to it by the parties and, initially, determine if there is a genuine issue of material fact. When doing so, court apply the underlying summary judgment standard when it encounters evidence that is irrelevant, speculative, ambiguous, argumentative, or constitutes a legal conclusion exclusively within the purview of the court's consideration. *See Burch v. Regents of Univ. of Cal.*, 433 F. Supp.2d 1110, 1119 (E.D. Cal. 2006) (noting that various evidentiary objections, such as relevance, were redundant at the summary judgment stage where the court can award summary

judgment only in the absence of a genuine issue of material fact based on evidence the contents of which must be admissible.).

The Ninth Circuit and the Federal Rules of Civil Procedure require affidavits offered in support of summary judgment be based on personal knowledge. *Bliesner v. The Commc'n Workers of Am.*, 464 F.3d 910, 915 (9th Cir. 2006). Federal Rule of Evidence 602 provides that "[a] witness may testify to a matter only of evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. The evidence establishing personal knowledge of the matter may consist of the witness's own testimony. *Id.*

To lay the foundation for receipt of a document in evidence, the party offering the exhibit must provide "the testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the document and, where appropriate, its delivery." *United States v. Dibble*, 429 F.2d 598, 602 (9th Cir. 1970).

Hearsay is defined as an out-of-court statement offered in evidence to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Hearsay is admissible only if it qualifies as an exception to the general hearsay rule. The Ninth Circuit has generally applied the limitation found in the hearsay rule set forth in Rule 802 of the Federal Rules of Evidence, to evidence offered by the parties at the summary judgment stage. *Orr v. Bank of Am.*, 285 F.3d 764, 778 (9th Cir. 2002); *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1182 (9th Cir. 1988).

In this case, Defendant Cudmore has objected to the Declaration of Plaintiff Tracy Gillis, ECF No. 65, the Declaration of Brian Gillis, ECF No. 66, and the

Declaration of Counsel, ECF No. 67, and identified specific portions of those declarations that contain improper hearsay, make statements without personal knowledge or foundation, and offer lay witness testimony on legal conclusions or subjects for experts. Lewis Decl. Exs. 1, 2, 3. ECF No. 69.

The Court has reviewed the Declarations of Tracy and Brian Gillis and concludes that Cudmore's challenges are largely correct. In presenting the factual background below, the Court has disregarded those potions of the challenged Declarations that offer statements not based on the declarants' personal knowledge; that offer inappropriate or irrelevant legal conclusions, or unqualified expert testimony; or that offer hearsay not subject to one of the recognized exceptions. With respect to the Declaration of Counsel, ECF No. 67, the challenged portions are Plaintiff's counsel's inappropriate commentary on the attached exhibits. The Court has disregarded those comments in assessing the record.

Cudmore also challenges Plaintiff's Exhibits 1 through 9, which were attached to the Declaration of Counsel. ECF No. 67. The Court will address each challenged exhibit in turn.

Plaintiff's Exhibit 1 is presented as a portion of the transcript of a DHS Safety Service Meeting held on May 27, 2015. Cudmore objects that Plaintiff's Exhibit 1 is not properly authenticated. Authentication "is a 'condition precedent to admissibility,' and this condition is satisfied by 'evidence sufficient to support a finding that the matter in question is what its proponent claims.'" *Orr*, 285 F.3d at 773 (quoting Fed. R. Evid. 901(a)). The Ninth Circuit has "repeatedly held that

unauthenticated documents cannot be considered in a motion for summary judgment." *Id.* Documents authenticated through personal knowledge "must be attached to an affidavit that meets the requirements of Fed. R. Civ. P. 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." *Id.* at 773-74 (internal quotation marks and citation omitted, alterations normalized). This cannot be accomplished by an affidavit of counsel that the transcript is a true and correct copy because such an affidavit lacks foundation even if the affiant counsel were present. *Id.* at 774.

In addition, Rule 80 requires that testimony stenographically reported and offered into evidence later at trial be "proved by the transcript thereof duly certified by the person who reported the testimony." Fed. R. Civ. P. 80(c). "[A]n uncertified copy of testimony is inadmissible in a summary judgment proceeding." *Orr*, 285 F.3d at 776 (internal quotation marks and citation omitted).

Upon review the Court concludes that Plaintiff's Exhibit 1 is not properly authenticated and the Court excludes Plaintiff's Exhibit 1 from consideration in ruling on the motions for summary judgment.

Plaintiff's Exhibit 2 is presented as copies of email correspondence between DHS caseworkers and Cudmore. Cudmore objects that this exhibit is not properly authenticated because Plaintiff did not submit an affidavit or deposition testimony from someone with personal knowledge of the emails, but rather attached them as exhibits to the declaration of Plaintiff's counsel, who lacks personal knowledge of the emails. Plaintiff does not identify the documents as having been produced in

discovery, nor does he attempt to authenticate them under Fed. R. Evid. 901(b) or 902. *Orr*, 285 F.3d at 777-78. Cudmore also objects to the contents of the emails as hearsay. In her sur-response brief, ECF No. 76, Plaintiff does not address the issue of authentication, but contends that the emails are not hearsay. The Court need not reach the question of hearsay, however, as Plaintiff has failed to properly authenticate Plaintiff's Exhibit 2 and it is therefore excluded from consideration.

Plaintiff's Exhibit 3 is presented as an "excerpt of trial proceedings" of the testimony of Defendant Chapman on April 27, 2016 in Lane County Juvenile Court in Case Nos. 15JU02384 and 15JU02385. The portions of the transcript being offered are counsel's questions to Chapman asking Chapman if she recalls Plaintiff's child making certain statements. These portions of the transcript are being offered for the truth of the matter asserted—that the child made the out-of-court statements recounted by attorney in the transcript—although they are not offered to show that the child's statements themselves are true. The Court concludes that Plaintiff's Exhibit 3 is inadmissible hearsay and excludes that exhibit from consideration.

Plaintiff's Exhibit 4 is presented as an excerpt of a May 2, 2014 forensic interview of one of the children. Plaintiff offers the transcript to show that the child "disclosed concerning statements of potential physical or sexual abuse." Counsel Decl. ¶ 5. Cudmore objects that this transcript is hearsay in that it is an out of court statement made to prove the truth of the matter asserted. The Court declines to exclude Exhibit 4 because it is offered not to prove the truth of the child's statements,

i.e., that the alleged abuse occurred, but only that the statements themselves were made.

Plaintiff's Exhibit 5 is presented as a copy of "the transcript of a conversation" between Plaintiff and one of the children on April 28, 2014.  Plaintiff's Exhibit 6 is presented as a "copy of the transcribed notes provided by Rachel Cudmore of the same audio recording" presented in Plaintiff's Exhibit 5.  Plaintiff seeks to offer these exhibits to show a discrepancy between the transcript of the audiorecording in Plaintiff's Exhibit 5 and Cudmore's transcribed notes in Plaintiff's Exhibit 6.  Defendant objects that both exhibits are hearsay in that they are out-of-court statements being offered for the truth of the matter being asserted.  The Court concludes that the exhibits are not being offered for the truth of what is being said, but rather to show that there is a difference between the professionally made transcript in Plaintiff's Exhibit 5 and the transcribed notes in Plaintiff's Exhibit 6. The Court will consider Plaintiff's Exhibit 5 and Plaintiff's Exhibit 6 for that limited purpose.

Plaintiff's Exhibit 7 is a copy of an Opinion and Order issued by a judge of the Lane County Circuit Court.  Cudmore objects to Plaintiff's Exhibit 7 on the basis that it is irrelevant to the question before the Court—Plaintiff's § 1983 claim against Cudmore—and that it is prejudicial to Cudmore because it would be given undue weight by a jury, citing *United States v. Sine*, 493 F.3d 1021, 1033-34 (9th Cir. 2007). As previously noted, however, an objection as to relevance is redundant under the summary judgment standard because the Court may only grant or withhold summary

judgment based on the presence or absence of a *material* question of fact. In making that determination, courts by necessity "cannot rely on irrelevant facts." *Burch*, 433 F. Supp.2d at 1119. Cudmore's concern about prejudice before a jury is likewise misplaced because the pending motions for summary judgment will not be presented to or resolved by a jury. Cudmore's arguments concerning the differences between what was decided by state court and what is presently before this Court go to the value or utility of the evidence, rather than to its admissibility. The Court declines to exclude Plaintiff's Exhibit 7.

Plaintiff's Exhibit 8 is presented as a copy of "the relevant testimony of law enforcement officer Salano at the January 26, 2016 custody hearing." This document lacks certification, nor does it identify the names of the witness, or the nature of date of the hearing. The exhibit is not properly authenticated and the Court excludes Plaintiff's Exhibit 8 from consideration.

Plaintiff's Exhibit 9 is presented as a copy of "the relevant testimony of Defendant Jordan Meyer before the Juvenile Court in the Original Hearing on May 6, 2015." This transcript is not properly certified and cannot, therefore, be considered in resolving the pending motions. Fed. R. Civ. P. 80(c); *Orr*, 285 F.3d at 776.

After Cudmore filed her reply brief, Plaintiff sought and received permission to file a sur-response brief to address the evidentiary challenges raised by Cudmore. In the Supplemental Declaration of Tracy Gillis, ECF No. 77, Plaintiff seeks to offer the transcript certifications for exhibits offered in support of her response brief. Plaintiff also seeks to offer twenty additional pages of transcript. This is beyond the

scope of what is permitted by Local Rule 56-1(b), which permits the filing of a "memorandum" addressing only the evidentiary objection. Nor did Plaintiff's motions requesting leave to file a sur-response to address Cudmore's evidentiary objections, ECF Nos. 72, 73, indicate that Plaintiff was seeking leave to make untimely additions to the factual record. The proposed exhibits attached to the Supplemental Declaration of Tracy Gillis, ECF No. 77, are not properly before the Court and will not, therefore, be considered.

## BACKGROUND

Plaintiff Tracy Gillis is the mother and non-custodial parent of two children, AMK1 and AMK2. Van Meter Decl. Ex. 1, at 10. ECF No. 52. Darin Kundert is the father of the two children. Plaintiff and Kundert divorced in March 2014. Van Meter Decl. Ex. 2, at 1. The original custody decision awarded primary custody of the children to Plaintiff, with Kundert having regular parenting time two days per week. Counsel. Decl. Ex. 7, at 1.

In March 2014, Plaintiff became concerned that Kundert had abused the children based on comments made by the children and reported her concerns to the Oregon Department of Human Services ("DHS"). Defendant Sandra Chapman was the DHS caseworker assigned to the case. Counsel Decl. Ex. 7, at 8-9. Chapman interviewed the child in question. *Id.* Chapman also interviewed Kundert, who denied abuse. *Id.* at 10.

One of the children was examined by a physician and the children were forensically interviewed at Kids First in late April and early May 2014 on the

instigation of law enforcement. Counsel Decl. Ex. 7, at 11-12. Law enforcement determined that neither child had disclosed abuse during the interview. The police suspended the investigation and forwarded the report to DHS. *Id.* at 12.

On April 14, 2014, Plaintiff contacted Defendant Rachel Cudmore, who was a licensed counselor with a master's degree in counseling psychology. Counsel Decl. Ex. 7, at 12. Plaintiff told Cudmore that she was seeking counseling for the children based on disclosures the children, which Plaintiff believed indicated physical and sexual abuse by Kundert. *Id.* at 12-13. Cudmore contacted DHS and, on May 14, 2014, Cudmore spoke with DHS about the case and raised the possibility that Plaintiff was engaged in parental alienation. *Id.* at 13. Cudmore also spoke to Kundert on June 3, 2014. *Id.* Cudmore met with Plaintiff and her husband Brian Gillis on June 13, 2014. *Id.*

On July 2, 2014, Cudmore reported Plaintiff to DHS for suspected emotional and mental abuse of the children because Cudmore did not believe the children were independently reporting. Counsel Decl. Ex. 7, at 13. Cudmore provided DHS with pictures and recordings made by Plaintiff and given to Cudmore. Based on Cudmore's report, DHS opened an investigation into Plaintiff. *Id.* DHS also contacted law enforcement who, in turn, contacted Cudmore. Cudmore told the police that she was concerned that Plaintiff was coaching the children to report abuse. *Id.*

Cudmore continued to provide counseling to Plaintiff and her children, while also providing evidence from that counseling to DHS. Counsel Decl. Ex. 7, at 16.

Plaintiff was, at this point, unaware that Cudmore believed Plaintiff was abusing the children, nor was she aware that Cudmore was providing information to DHS. *Id.*

In August 2014, the children, then aged four and six years old, underwent medical exams concerning Plaintiff's allegations of abuse of the children by Kundert. Counsel Decl. Ex. 7, at 18. The results of the exam were normal and both the DHS and law enforcement investigations of Kundert were closed and coded as "unfounded." *Id.*

On March 5, 2015, Cudmore made a second report to DHS regarding her concern that Plaintiff was abusing the children. Counsel Decl. Ex. 7, at 21. On the same day, March 5, 2015, Kundert filed a motion to modify the judgment of dissolution, seeking fifty-fifty parenting time and alleging that Plaintiff was alienating the children from Kundert and that Plaintiff had falsely accused Kundert of abusing the children, which had caused DHS to open three cases against him. *Id.* at 2.

On April 13, 2015, Plaintiff became concerned by statements made by one of the children, which she believed indicated abuse by Kundert. Counsel Decl. Ex. 7, at 21. Plaintiff took the child to see Cudmore on April 14, 2015, and, on Cudmore's advice, took the child in for a medical examination. *Id.* at 21-22. The examination, which was done at the emergency room, gave "no confirmation of abuse," but "enough signs to be concerned." *Id.* at 22. Plaintiff interpreted this as confirmation of abuse by Kundert. *Id.*

Plaintiff made a report of child abuse to DHS and Defendant Jordan Meyer and Kelly Hickman were assigned as the caseworkers. Counsel Decl. Ex. 7, at 22. Meyer and Hickman met with Plaintiff at the hospital and spoke to both her and to the examining physician. *Id.* Plaintiff told Meyer and Hickman that the child had disclosed abuse and that Cudmore had told Plaintiff to take the child in for an examination. *Id.* A law enforcement investigation was also commenced.

The police, together with Meyer and Hickman, met with Cudmore on April 16, 2015. Counsel Decl. Ex. 7, at 22-23. During that meeting, Cudmore disclosed that she was concerned for the children and believed they were being abused by Plaintiff. *Id.* at 23. In speaking with Hickman and the police on April 20, 2015, "Cudmore made it very clear that neither of the girls had ever disclosed sexual abuse by their father to her" and "also stated that [Plaintiff] is coaching the children." Van Meter Decl. Ex. 4, at 4. Cudmore gave her case file and chart notes to Meyer, Hickman, and the police and "denied ever having a disclosure from either child that was not the result of [Plaintiff's] prompting." Counsel Decl. Ex. 7, at 23. The police also spoke with the examining doctor, who told them that there was no confirmation of abuse. *Id.* Law enforcement determined that they would not investigate the allegations further. *Id.*

On April 30, 2015, Kundert contacted Meyer and reported the Plaintiff was withholding the children from regularly scheduled visits and that Plaintiff had told Kundert it was because DHS had a plan in place for the children. Van Meter Decl. Ex. 4, at 9. Meyer told Kundert this was not the case. *Id.*

After meeting with law enforcement, Cudmore met with Kundert and told him that she believed Plaintiff was harming the children by causing them to make allegations of abuse against Kundert. Counsel Decl. Ex. 7, at 23. Cudmore also told Kundert that Plaintiff had caused the children to undergo "horrific" pelvic medical exams as a result of the allegations of abuse. *Id.* Kundert's attorney prepared an immediate danger petition seeking to modify the custody order and have the children removed from Plaintiff's care and placed with Kundert. *Id.* Cudmore supported this effort and provided Kundert's attorney with information to assist his case. *Id.* A hearing was held on Kundert's immediate danger petition on May 4, 2015 and the petition was denied. Gillis Decl. ¶ 10.

Cudmore also told Meyer that "the children were telling her that they had been forced to fabricate allegations over a period of time and that she was starting to see the initial signs of PTSD." Counsel Decl. Ex. 7, at 23; Van Meter Decl. Ex. 4, at 17. Meyer determined that the allegations of abuse against Kundert should be coded as "unfounded" because the children "did not disclose any type of sexual abuse and there was not physical evidence of sexual abuse," and that "during this assessment it was learned that the children have been coached by [Plaintiff] to fabricate allegations of sexual abuse by their father to their counselor [Cudmore] to prompt an investigation by LEA/DHS." Van Meter Decl. Ex. 4, at 19. Meyer noted that the children showed signs of severe anxiety and PTSD concluded that the assessment would be coded as "founded" with respect to Plaintiff for "Neglect due to mental injury" of both children. *Id.* at 20. As a result, Meyer determined that DHS should intervene and DHS filed a

petition to remove the children from Plaintiff's care on May 5, 2015.  Counsel Decl. Ex. 7, at 23; *see also* Van Meter Decl. Ex. 4, at 16-17 (describing Cudmore's reports to DHS concerning her belief that Plaintiff was harming the children by coaching them to make false allegations against Kundert and noting that "DHS has been involved with this family on more than one occasion due to reported concerns of sex abuse" by Kundert and that "[d]uring each of those investigation[s] there was no evidence of sex abuse found and neither child has ever disclosed sex abuse.").

The DHS dependency petition alleged that the children came within the jurisdiction of the juvenile court because (1) Plaintiff had coerced the children to make false reports to law enforcement; (2) Plaintiff had subjected the children to "repeated and unnecessary invasive physical exams and forensic interviews, to perpetuate false allegations of sexual abuse,"; (3) that Plaintiff's mental health condition interfered with her ability to safely parent; (4) that Plaintiff had subjected the children to mental and emotional abuse resulting in impairment of the children's psychological and emotional well-being and functioning; and (5) that Kundert lacked a custody order allowing him to act protectively.  Counsel Decl. Ex. 7, at 2.  The juvenile court granted the petition.  *Id.* at 23.

On May 6, 2015, a shelter review hearing was held before the juvenile court and the court granted DHS temporary custody of the children and limited their contact with Plaintiff except as authorized or supervised by DHS.  Counsel Decl. Ex. 7, at 2.  The children were placed with Kundert.  *Id.*; Van Meter Decl. Ex. 4, at 9.

Kundert's motion to modify custody, parenting time, and child support was heard by the Lane County Circuit Court in a five-day hearing in January and February 2016. Counsel Decl. Ex. 7, at 1. The DHS dependency cases were heard on April 26 and 27, 2016. *Id.* The state court dismissed the dependency petition, but noted that "[t]he dismissal does not meet that the court's initial decision to place the children in the care of DHS was incorrect or inappropriate given the information it had at the time," but rather that it "simply means that the court has found that the state failed to prove by a preponderance of the evidence any of the specific allegations in the Petition." *Id.* at 40-41. The state court also noted that it "does not fault DHS Child Welfare for taking action to protect the children from [Plaintiff] given the information provided to the agency by the children's counselor [Cudmore]." *Id.* at 42.

The Lane County Circuit Court issued its Opinion and Order on the custody motion on June 14, 2016, and transferred sole legal custody of the children to Kundert. Counsel Decl. Ex. 7, at 41. In making its findings, the state court concluded that Cudmore's testimony was "not credible" and that Cudmore's bias against Plaintiff was "palpable." *Id.* at 24. The state court also concluded that the evidence did not support physical or sexual abuse of the children by Kundert. *Id.* at 27. Plaintiff did not file a direct appeal of the state court decision transferring sole legal custody of the children to Kundert. Van Meter Decl. Ex. 2.

With respect to the "founded" disposition made by DHS against Plaintiff, Plaintiff never sought review of that disposition by DHS, nor did she file a petition for judicial review of that disposition. Van Meter Decl. ¶ 2.

On October 1, 2015, Plaintiff filed a notice of tort claims against DHS, indicating that she intended to bring an action for negligence, misrepresentation, and/or defamation based on the dependency petition filed by Meyer. Van Meter Decl. Ex. 5. Plaintiff's tort claim notice gave May 1, 2015 as her date of loss. *Id.* Plaintiff commenced this action on May 4, 2017. ECF No. 1.

## DISCUSSION

In her Second Amended Complaint ("SAC"), ECF No. 28, Plaintiff brings claims for (1) violation of her Fourteenth Amendment substantive due process rights against Defendants Chapman, Meyer, Beechinor, and Canizales; (2) violation of her Fourteenth Amendment procedural due process rights against Defendants Chapman, Meyer, Beechinor, and Canizales; (3) "Unreasonable interference with Familial Association," in violation of her Fourteenth Amendment rights against Defendant Cudmore; and (4) for injunctive and declaratory relief against all Defendants.

As a preliminary matter, the Court notes that Plaintiff's response brief, which addresses both summary judgment motions, was filed nearly two weeks after the deadline established by the Court. ECF Nos. 63, 64. The response brief also substantially exceeds the page and word count limitations set forth in the Local Rules for this District and Plaintiff did not seek leave of the Court to file an overlarge brief. LR 7-2(b); LR 10-6. Although Defendants urge the Court to disregard the response brief for failure to comply with the Local Rules, the Court will consider the brief in the interest of full consideration of the case. Plaintiff's counsel should familiarize

himself with the requirements of the Local Rules for the District of Oregon and comply with those requirements in future filings.

In response to Defendants' Motions for Summary Judgment, Plaintiff concedes and agrees to dismiss her claims against Defendants Beechinor, Canizales, and Pakserisht and to dismiss her claims for declaratory and injunctive relief. The Court accepts those concessions. The remaining claims are for violation of Plaintiff's Fourteenth Amendment rights against Defendants Chapman, Meyer, and Cudmore pursuant to 42 U.S.C. § 1983.

As noted, Plaintiff brings her claims alleging violation of her due process rights pursuant to § 1983. Title 42 U.S.C. § 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). To maintain a claim under § 1983, "a plaintiff must both (1) allege the deprivation of a right secured by the federal Constitution or statutory law, and (2) allege that the deprivation was committed by a person acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

## I.    Timeliness

The State Defendants move for summary judgment on the basis that Plaintiff's claims are time-barred to the extent that they rely on events occurring prior to May 4, 2015.

Although § 1983 contains no statute of limitations, the Supreme Court "requires courts to borrow and apply to all § 1983 claims the one most analogous state

statute of limitations." *Owens v. Okure*, 488 U.S. 235, 240 (1989); *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004) ("For actions under 42 U.S.C. § 1983, courts apply the forum state's statute of limitations for personal injury actions, along with the forum state's law regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent with federal law."). "Oregon's two-year statute of limitations for personal injury actions applies to actions under 42 U.S.C. § 1983." *Cooper v. City of Ashland*, 871 F.2d 104, 105 (9th Cir. 1989).

However, federal law determines when a cause of action accrues and the point at which the statute of limitations begins to run for a § 1983 claim. *Norco Construction, Inc. v. King Cnty.*, 801 F.2d 1143, 1145 (9th Cir. 1986). A federal claim accrued when the plaintiff "knows or has reason to know of the injury which is the basis of the action." *Id.* (internal quotation marks and citation omitted).

Here, the State Defendants contend that because Plaintiff filed this action on May 4, 2017, Plaintiff's claims are time-barred to the extent that they rely on events alleged to have occurred prior to May 4, 2015. Plaintiff contends that her claims are based on misrepresentations and falsehoods perpetuated by Chapman and Cudmore, which Plaintiff asserts she did not discover until 2016. Plaintiff's is implausible. First, Plaintiff's claims arise from the allegedly unlawful removal of her children from her care, which occurred in May 2015. Plaintiff cannot reasonably claim to have been unaware of either the removal of her children or the State Defendants' stated reasons for removing the children in light of on Plaintiff's own extensive personal involvement in the subsequent state court litigation. And second, Plaintiff filed a state notice of

tort claims in October 2015, indicating that she intended to bring an action for defamation and negligence based on DHS's actions, which unambiguously demonstrates that Plaintiff was aware of her injury prior to 2016. The State Defendants' motion is therefore GRANTED and the Court concludes that Plaintiff's claims are time-barred to the extent that they rely on events occurring prior to May 4, 2015.

## II.    Personal Involvement

The State Defendants move for summary judgment on the basis that Plaintiff has not shown that any of the individual named State Defendants were personally involved in the claimed violations. As noted, Plaintiff has conceded this issue with respect to all of the State Defendants except for Chapman and Meyer. And, for the reasons set forth in the previous section, Plaintiff's claims against Chapman and Meyer are restricted those arising on or after May 4, 2015.

Subject to those restrictions, Plaintiff alleges (1) that Meyer and Chapman assisted Kundert in obtaining custody of the children; (2) that Meyer testified at the dependency hearing that that DHS involvement was necessary because the children were showing symptoms of abuse stemming from Plaintiff's coaching of allegations of abuse against Kundert; (3) that Meyer and Chapman exchanged information with Cudmore and Kundert to aid Kundert in seeking custody of the children; (4) that Meyer offered to dismiss the dependency case on May 27, 2015 if Plaintiff would concede custody of the children to Kundert; (5) that Chapman did not provide information to Plaintiff, which Chapman had allegedly received from the children;

and (6) that Chapman maintained throughout the case that the children never made any concerning disclosures, which Plaintiff asserts was a material misrepresentation to the state court.  Pl. Resp. at 8-9.

The sixth allegation relies on Plaintiff's Exhibit 3, which the Court has excluded from consideration for the reasons discussed in the previous section.  It cannot, therefore, be relied upon to maintain a claim against Chapman.  The first five allegations of personal involvement by Meyer and Chapman are ordinary parts of DHS's mandate to investigate and prevent the abuse and neglect of children and do not support a finding of personal involvement in the violation of Plaintiff's substantive due process rights by either Meyer or Chapman.

### III.    Quasi-Judicial Immunity

The State Defendants also assert that Meyer and Chapman are protected by quasi-judicial immunity to extent that Plaintiff's claims rely on the caseworkers' actions in placing the children with Kundert pursuant to the juvenile court's initial dependency decision.

In *Coverdell v. Dep't of Soc. and Health Servs.*, 834 F.2d 758 (9th Cir. 1987), the Ninth Circuit held that a child protective services caseworker was entitled to "absolute quasi-judicial immunity for damages stemming from the worker's apprehension of a child pursuant to a valid court order."  *Id.* at 765.  The Ninth Circuit held that the "rationale for immunizing persons who execute court orders is apparent," because such persons "are themselves integral parts of the judicial process" and "[t]he fearless and unhesitating execution of court orders is essential if

the court's authority and ability to function are to remain uncompromised." *Id.* The Ninth Circuit also noted that the parent of a child so taken is not remediless because he or she "may always attack the court's order directly or on appeal." *Id.*

In this case, the state court opened a juvenile dependency proceeding and issued a temporary order placing the children with Kundert. To the extent that Plaintiff's claims are based on the State Defendants complying with the that state court order, the State Defendants are entitled to quasi-judicial immunity consistent with *Coverdell*.[1]

## IV.    The State Actor Requirement

Cudmore moves for summary judgment on the basis that she is not a state actor and so cannot be held liable under § 1983. As noted, Cudmore was a private counselor retained by Plaintiff to provide mental health services to Plaintiff and the children.

Generally, private parties are not state actors for purposes of § 1983. *Price v. Hawaii*, 939 F.2d 702, 707-08 (9th Cir. 1991). A litigant may, however, "seek damages under 42 U.S.C. § 1983 from a private party based on the violation of a constitutional right" if the plaintiff can show that "the private party engaged in state action under color of state law[.]" *Brunette v. Humane Soc'y of Ventura Cnty.*, 294 F.3d 1205, 1209 (9th Cir. 2002). Four tests have been developed to determine whether a private [party's] actions amount to state action: (1) the public function test; (2) the joint action

---

[1] In her response brief, Plaintiff devotes considerable time to arguing that Meyer and Chapman are not entitled to prosecutorial immunity or qualified immunity, but the Court notes that the State Defendants have not asserted either of those defenses in their motion for summary judgment.

test; (3) the state compulsion test; and (4) the governmental nexus test." *Franklin v. Fox*, 312 F.3d 423, 444-45 (9th Cir. 2002) (citation omitted).  In this case, Plaintiff alleges that Cudmore may be treated as a state actor under the joint action test or the governmental nexus test.

### A. Joint Action

"The joint action test asks whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012) (internal quotation marks and citation omitted).  The joint action test "can be satisfied either by proving the existence of a conspiracy or by showing that the private party was a willful participant in joint action with the State or its agents." *Id.* (internal quotation marks and citation omitted).  The joint action test, however, "requires that the private parties have participated in the activity which deprive[d] [the plaintiff] of constitutional rights." *Smith v. N. Star Charter Sch., Inc.*, 593 F. App'x 743, 744 (9th Cir. 2015) (internal quotation marks and citation omitted); *see also Tsao*, 698 F.3d at 1140 ("[J]oint action exists where the state has so far insinuated itself into a position of interdependence with [the private entity] that it must be recognized as a joint participant in the challenged activity." (internal quotation marks and citation omitted)).  "This occurs when a state official has substantially cooperated in the unconstitutional act of a private entity and the state has knowingly accepted the benefits derived from the unconstitutional behavior." *Webber v. First Student, Inc.*, 928 F. Supp.2d 1244, 1259 (D. Or. 2013) (internal citations omitted).  "However, a

state official's mere acquiescence in the actions of a private party is not sufficient to show joint action." *Id.* (citing *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 164 (1978)).

Of note, the joint action test requires that the private party have participated in the activity that deprived the plaintiff of a constitutional right. *Smith*, 593 F. App'x at 744. In this case, the activity alleged to have violated Plaintiff's rights was the removal of the children from her care. SAC ¶¶ 28-29, 45. The removal of Plaintiff's children from her care was done by DHS and the state juvenile court. Plaintiff has not alleged, and cannot prove, that Cudmore participated in the removal of Plaintiff's children or that she had the ability or the authority to do so.[2]

In addition, Plaintiff contends that Cudmore improperly shared her treatment file with DHS and that Cudmore presented the caseworkers with information adverse to Plaintiff. Cudmore is a mandatory reporter for suspected child abuse under Oregon law. ORS 419B.010(1). "[M]erely reporting suspected child abuse does not constitute state action for purposes of § 1983." *Sawyer v. Legacy Emanuel Hospital & Health Center*, 418 F. Supp.3d 566, 572 (D. Or. 2019) (internal quotation marks and citations omitted, alterations normalized).

The Court concludes that Plaintiff has failed to demonstrate a material question of fact concerning joint action between Cudmore and the governmental actors in this case.

---

[2] Plaintiff has presented a series of emails in which Cudmore was included in communications with the DHS caseworkers but as discussed above, that exhibit is not admissible and has been excluded from consideration.

### B. Governmental Nexus

The "governmental nexus" test is "[a]rguably the most vague of the four approaches" and "asks whether there is such a close nexus between the State and the challenged action that the seemingly private behavior may be fairly treated as that of the State itself." *Kirtley v. Rainey*, 326 F.3d 1088, 1094-95 (9th Cir. 2003) (internal quotation marks and citation omitted). "Generally, the governmental nexus test requires evidence that the private actor is entwined with governmental policies, or the government is entwined in the private actor's management or control." *Webber*, 928 F. Supp.2d at 1260 (internal quotation marks and citation omitted, alterations normalized). "A showing of mere 'significant links' is insufficient to demonstrate a governmental nexus between the state and a private entity without further evidence of 'substantial interconnection.'" *Id.* (quoting *Kirtley*, 326 F.3d at 1093). The Ninth Circuit has articulated four factors to consider when determining whether entwinement exists: (1) whether the private entity is primarily made up of state institutions; (2) whether state officials dominate decision making of the private entity; (3) the private entities funds are largely generated by the state institutions; and (4) whether the private entity is acting in lieu of a traditional state actor. *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 955 (9th Cir. 2008).

In this case, Plaintiff has failed to show any of the factors that would support a close nexus between Cudmore's actions and the state. Cudmore is not part of a state institution, nor do the state officers dominate Cudmore's decision making process. There is no evidence that Cudmore was funded by the state actors, nor is

there evidence that Cudmore was acting in lieu of a traditional state actor. In response, Plaintiff points to *Jensen v. Lane Cnty.*, 222 F.3d 570, 575-76 (9th Cir. 2000), in which a private physician was found to be a state actor. *Jensen* is inapposite, however, because the physician in *Jensen* was acting under contract with the local government, which created "a complex and deeply intertwined process of evaluating and detaining individuals who are believed to be mentally ill and a danger to themselves or others." *Id.* at 574-75. Cudmore was under no comparable contract with the state actors and was, instead, a private mental health provider retained by Plaintiff. The Court concludes that there was no close nexus between Cudmore's actions and those of the state actors such that Cudmore's actions may be fairly treated as that of the state.

In sum, the Court concludes that Cudmore was not a state actor and so Plaintiff cannot maintain a claim against Cudmore under § 1983. Cudmore's motion for summary judgment is, therefore granted.

## V.    Due Process

Plaintiff brings claims against Meyer and Chapman for violation of her procedural and substantive due process rights under the Fourteenth Amendment. The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "To state a prima facie substantive or procedural due process claim, one must, as a threshold matter, identify a liberty or property interest

protected by the Constitution." *United States v. Guillen-Cervantes*, 748 F.3d 870, 872 (9th Cir. 2014).

## A. Procedural Due Process

"The Due Process Clause forbids the governmental deprivation of substantive rights without constitutionally adequate procedure." *Shanks v. Dressel*, 540 F.3d 1082, 1090-91 (9th Cir. 2008). To prevail on a procedural due process claim, a plaintiff must establish: (1) a constitutionally protected liberty or property interest; (2) a deprivation of that interest by the government; and (3) a lack of adequate process. *Id.* at 1090.

The precise basis of Plaintiff's claim for violation of her procedural due process rights is not entirely clear. From Plaintiff's response brief, it appears that Plaintiff is asserting a lack of post-deprivation process following the removal of the children from her care by DHS. Pl. Resp. 15. Plaintiff was not deprived of due process following the removal of the children from her care, however.

A previously noted, a shelter review hearing was held on May 6, 2015 and the juvenile court granted DHS temporary custody of the children. Counsel Decl. Ex. 7, at 2. The children were placed with Kundert. *Id.* at 23; Van Meter Decl. Ex. 4, at 9. Plaintiff participated in that hearing and in the juvenile court's subsequent dependency proceedings. Plaintiff did not appeal the state circuit court's decisions. On this record, the Court concludes that Plaintiff has failed to demonstrate that the State Defendants violated her procedural due process rights.

## B. Substantive Due Process

"The substantive component of the Due Process Clause forbids the government from depriving a person of life, liberty, or property in such a way that . . . interferes with rights implicit in the concept of ordered liberty." *Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 996 (9th Cir. 2007) (internal quotation marks and citation omitted, alterations in original). "Substantive due process protects individuals from arbitrary deprivation of their liberty by the government." *Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1195 (9th Cir. 2013). Only the most "egregious official conduct can be said arbitrary in the constitutional sense." *Cnty of Sacremento v. Lewis*, 523 U.S. 833, 846 (1998) (internal quotation marks and citation omitted). "To constitute a violation of substantive due process, the alleged deprivation must shock the conscience and offend the community's sense of fair play and decency." *Sylvia Landfield*, 729 F.3d at 1195 (internal quotation marks and citation omitted). The Supreme Court has held "that the 'shock the conscience' standard is satisfied where the conduct was intended to injure in some way unjustifiable by any government interest or in some circumstances if it resulted from deliberate indifference." *Rosales-Mireles v. United States*, ___U.S.___, 138 S. Ct. 1897, 1906 (2018) (internal quotation marks and citation omitted).

With respect to Chapman, the only alleged act that falls within the statute of limitations is Plaintiff's allegation that Chapman made material misrepresentations to the state court. The evidence on which Plaintiff relies for this contention is Plaintiff's Exhibit 3, which the Court has found to be inadmissible. But even if the

exhibit were admissible, it shows only that Chapman testified that she did not recall the child making the specific statements advanced by counsel and that she had not reviewed the child's forensic interview prior to giving her testimony. Counsel. Decl. Ex. 3, at 2-4. Even viewed in the light most favorable to Plaintiff, this does not demonstrate a material question of fact as to whether Chapman made material misrepresentations to the state juvenile court.

With respect to Meyer, Plaintiff's claim appears to be based on his filing of a dependency petition and the removal of the children from Plaintiff's custody on an emergency basis.[3] A claim by a parent for the unconstitutional removal of children is properly "assessed under the Fourteenth Amendment standard for interference with the right to family association." *Wallis v. Spenser*, 202 F.3d 1126, 1137 n.8 (9th Cir. 2000).

"It is well established that a parent has a fundamental liberty interest in the companionship and society of his or her child and that the state's interference with that liberty interest without due process of law is remediable under 42 U.S.C. § 1983." *Lee v. City of Los Angeles*, 250 F.3d 668, 685 (9th Cir. 2001) (internal quotation marks and citation omitted, alterations normalized).

However, this constitutional right is not absolute. *Mueller v. Auker*, 700 F.3d 1180, 1186 (9th Cir. 2012). "Under certain circumstances, these rights must bow to

---

[3] Plaintiff also appears to base her substantive due process claim on Meyer's offer to dismiss the dependency action if Plaintiff would concede custody of the children to Kundert. It is not clear how such an offer would have violated Plaintiff's substantive due process rights as the entire basis of the dependency action was that the children were unsafe in Plaintiff's custody and that the children should be placed in the care and custody of their father.

other countervailing interests and rights, such as the basic independent life and liberty rights of the child and of the State acting as *paren patriae*; and on occasion, this accommodation may occur without a pre-deprivation hearing." *Id.* "The interest of the parents must be balanced against the interests of the state and, when conflicting, against the interests of the children." *Woodrum v. Woodward Cnty.*, 866 F.2d 1121, 1125 (9th Cir. 1989). The Ninth Circuit had recognized that the Fourteenth Amendment's "protection of parental rights prohibits the state from separating parents from their children without due process of law except in an emergency." *James v. Rowlands*, 606 F.3d 646, 654 (9th Cir. 2010) (internal quotation marks and citation omitted).

> Officials may remove a child from the custody of its parent without prior judicial authorization only if the information they possess at the time of the seizure is such as provides reasonable cause to believe that the child is in imminent danger of serious bodily injury and the scope of the intrusion is reasonably necessary to avert that specific injury.

*Wallis*, 202 F.3d at 1138.

Here, Meyer based the dependency petition and the removal of the children on his assessment that Plaintiff was harming the children by encouraging them to fabricate allegations of abuse against Kundert and by subjecting them to repeated medical examinations in search of physical evidence to support those allegations. This was in large part based on information conveyed to Meyer by Cudmore, the children's private mental health provider. Meyer filed the dependency petition after Kundert failed to gain custody of the children in a parallel custody proceeding. Viewing the facts in the light most favorable to Plaintiff, the record shows that

Meyer's action was based on a belief that Plaintiff posed a danger to the children and that, in the absence of a custody order, Kundert was unable to act to mitigate the risk. *See* SAC ¶ 14. A hearing was held promptly on May 6, 2015, a which the juvenile court concurred with Meyer's recommendations and awarded temporary custody of the children to DHS. *Id.* at ¶¶ 14-15.

On this record, the Court concludes that the information available to Meyer at the time was sufficient to justify removal of the children from Plaintiff's custody on an emergency basis and that no reasonable jury could conclude that Meyer's actions violated Plaintiff's substantive due process rights.

In sum, the State Defendants are entitled to summary judgment on Plaintiff's claims for violation of her substantive and procedural due process rights.

## CONCLUSION

For the reasons set forth above, Defendant Rachel Cudmore's Motion for Summary Judgment, ECF No. 50, is GRANTED and Plaintiff's claim against Cudmore is dismissed. The State Defendants' Motion for Summary Judgment, ECF No. 51, is GRANTED, and Plaintiff's claims against the State Defendants are dismissed.

It is so ORDERED and DATED this ___31st___ day of March, 2022.

  /s/Ann Aiken
Ann Aiken
United States District Judge